Smith, C. J.
On the 20th day of April, 1888, the village of Morrow, having less than one thousand inhabitants, the council thereof" passed an ordinance “ to provide for the purchase of a steam fire-engine, hose-reels, and such other apparatus as shall be- ' deemed necessary for the use of such village, and to remodel4 the present engine-house of the village,” and providing by' the 3rd section thereof “that the cost and expenses of said" purchase and repairs be and the same are hereby assessed upon the general tax-list of the taxable real and personal property of said village of Morrow.” By another ordinance, passed! on the same day, entitled “An ordinance for the issue and sale-of bonds to raise fuuds to purchase a steam fire-engine, hose-reels, hose, etc., and to remodel the engine-house,” it was de- • dared that the sum of 15,000 was necessary for this purpose, and it was provided that ten bonds of the village, each for the sum of 1500.00, be issued, bearing interest at the rate of six per cent, per annum, the interest to be payable semi-annually,, one of said bonds to fall due in one year, and one each year-thereafter until all were paid. And the council thereupon-proceeded to issue said bonds and advertised them for sale.
The plaintiff then filed his petition in this cause, setting-out the proceedings of the council in this behalf, and alleging that he had applied to the solicitor of said village to bring an action against the village to enjoin the issue and sale of" said bonds, and the levy of the tax to pay the same, but that the solicitor refused to do so, and that thereupon the plaintiff-brought this action on behalf of such village, praying for such. *276 'injunction, and he alleges that all of such proceedings of the ■ council are illegal and void, for the reason that the question of ■the issuing of said bonds had not been submitted to the voters ■of the village as is required by law, and that there was no '■money in the treasury of the village applicable to any such ¿purpose.
A preliminary injunction as prayed for was granted by the court of common pleas, but on the filing of a general demurrer to this petition, on hearing, the court dissolved the injunction and dismissed the action. An appeal was taken by the plaintiff from the judgment, and application has been made rto the judges of this court, in chambers, for an injunction as ■prayed for in the petition, until the case can be fully heard, and on this application the question as to the right of the ■council thus to proceed has been fully argued.
There is no question but the legislature has conferred upon '.the council of a village the right annually to levy taxes on the ¡property within the village “for the erection of buildings required by the fire department and for the purchase of steam or other fire-engines and other apparatus, and for the support of the fire department.” (Sec. 2683, Rev. Stats.) But by section 2689 it is provided that “all taxes levied or ordered by a village (excluding taxes for school purposes) shall not exceed in any one year ten mills on each dollar of the value of any property as valued for taxation on the county tax-list,” the purpose of the legislature evidently being to limit the burdens to be placed upon the tax-payer for the carrying on of the municipal government. If, therefore, a tax for that purpose .had theretofore been' levied, and if the amount had been collected and was in the treasury of the village unappropriated, this amount so in the treasury undoubtedly might have been .applied to the purpose for which it had been collected, by an •ordinance or resolution duly certified in accordance with the provisions of the statute, sec. 2702. But without this, no contract, agreement or other obligation involving t.he expenditure of money therefor, or. ordinance providing for the appropriation thereof is valid; on the contrary is void.
. There being then now no money in the village treasury ¡applicable to this purpose, as the pleadings concede, the con *277 tention of the village solicitor is, that the council -has the-right to borrow the money on the bonds of the village and! place it there and appropriate in the manner proposed.
We are of the opinion'that the power of a municipal corporation to borrow money and issue bonds therefor, is conferred only-by statute, and if none can be found to justify it.in a particular case, such action must be held invalid. The-only sections of the municipal code that refer to this subject,. and which in several kinds of cases do expressly authorize-this to he done, are found in chapters 1 and 2 of the 9th division of that title; chapter 1 being headed “ Finance and Taxation,” and chapter 2, “ The power to borrow money and issue bonds.” As has been stated, sec. - 2682-2683 and 2689 of this first chapter point out the purposes for which the council of a municipal corporation may levy taxes, and affix a-limit to the amount thereof. And the only sections in these-t-wo chapters which expressly authorize the issue of bonds,, are-secs. 2685 and 2700-2701, 2704 and 2705, and the question is, does either of these sections cover the case at bar?
Section 2685 provides that the council may, under certain restrictions mentioned therein, anticipate the tax authorized to be laid for sanitary and street cleaning purposes by temporary loans. Section 2700 allows loans to be made by municipal corporations in anticipation- of the general revenue fund to a. limited amount. Section 2701 authorizes the council to borrow money and issue bonds therefor for the purpose of extending the time of payment of a pre-existing debt, when from its limits of taxation it is unable to pay the same; but-the amount of the debt is not to be increased; and sections 2704 and 2705 authorize the borrowing of money and the issuing of bonds therefor, in anticipation of the collection of' any special assessment, as distinguished from a tax on all the-property of the village for general purposes. It is clear, we think, and we understand it to be conceded by the solicitor of' the village, that neither of these sections authorizes the issue-of bonds by the village for the purposes for which they propose to issue them, but the claim is made that section 2686 authorizes the action taken. It reads as follows: “ When the bonds of the corporation have been issued in anticipation of a. *278 ■tax provided for in section 2688, the same tax may be laid to 'raise means for the payment thereof, as is authorized for the ¿purpose for which they were issued.” And it is urged that ,by it an implied license is given to the council, whenever it it has no money in the treasury for a special purpose, if it -sees fit to do so, to issue its bonds for any amount, and running for any length of time, the only limitation on the right ¡being, that the tax laid to pay the principal and accruing interest on bonds payable in any year shall not with the taxes levied for all other purposes, exceed ten mills on the dollar valuation on the tax duplicate.
• We think this claim wholly untenable. The idea that a ;power like this, and so liable to abuse, should be granted by implication, when in all other cases the right to issue bonds if given, is done in express terms, and is carefully guarded, and many restrictions thrown around it, is not to be enter-stained. And if such extensive power is given by this section, what was the necessity of expressly conferring it in the other ■ cases? No satisfactory answer can be given to this. But we think the meaning of the section is plain, and that it refers to cases where the bonds have already in pursuance of some >of the other provisions of the statute, as under section 2685, and 2700 and 2701, been legally issued. It can hardly be possible ;in view of the stringent provisions of the law as to the creation of a debt by a municipal corporation, and the amount of ■the taxes to be levied for the various purposes of the corporation, that by any such process as this, any amount of money ■might be brought into the treasury and thus disposed of, by ■placing the debt on the shoulders of a coming generation.
But in our judgment the question is altogether freed from doubt, when we consider the provisions of section 2835-6-7, 'Rev. Stats.(under the chapter providing for the laying of taxes), which we think was intended to apply to cases of this kind, -and when the money for such expenditures has not been collected. They provide substantially, that “ when it is desired by the voters of a municipal corporation,” “to purchase a fire-•engine, hose and apparatus,” or “to make any improvement ■of a local character, not herein specified, and for which a tax may be constitutionally levied,” the council of the municipal *279 -«corporation may issue and sell their bonds, in amount and in •denominations such as they may deem necessary for the -special purpose in view, and shall levy a tax in addition to the amount otherwise authorized, every year during the period the bonds have to run, sufficient in amount each year to pay the bonds falling due within that year, and the accruing interest.”
But it is expressly provided, that before any bonds are issued, or tax levied for such purposes, the question of issuing ■the bonds shall be submitted to the voters of the municipal • corporation at a general election, in the manner therein provided for; and if two-thirds of the voters voting at such election, vote in favor thereof, then, and not otherwise, the bonds «•shall be issued and the tax levied.
We see no reason why this is not the plan which must be •resorted to in a case of this kind, when the money is not in ‘the treasury and it is to be raised by the issue of bonds. The ¿legislature has seen proper to say that no such burden shall ¡'be imposed upon the people of a village except it can be paid by the proceeds of the ordinary levies without their own con■sent, and not simply by the consent of a majority, but of two-thirds of those voting upon the proposition. Having said so, •it would hardly seem to be legal or proper for the council, of fits own motion, to incur the indebtedness without a vote of the people.
It is claimed, however, that those sections do not, and were not intended to interfere with the general power of the council, but that their object and purpose was to confer upon the •-voters the right in some way or other, by expressing their desire therefor, to require the council to act. We think this is •not the case, but that the action under it, first comes from the «council, and that the desire of the voters is to be expressed at •the election, at which the question of the issue of the bonds is rto be submitted to them.
This, we think, is substantially settled by the decision of the supreme court in the case of Croll v. The Village of Franklin, 40 Ohio St. 320, where the court say, “ The only change from the act of March 1, 1877 (by -that of May 14, 1878) was the substitution of the words “ when the inhabitants generally of any *280 municipal corporation shall desire,” for the words, “when any municipal corporation' shall desire.” Held, this change of phrases made no change in meaning. No mode being provided for ascertaining what the “ inhabitants generally desired,” the act of their representatives in council assembled,, expressed that desire.
Whether the same result can be accomplished by proceedings under section 2687, the court has not considered. That simply allows the council to levy a greater tax for either of the purposes specified in sections 2682-3 than is authorized in terms by that chapter (viz., 10 miles in all), if the proposition to make such levy has been first submitted by ordinance-to a vote of the electors of the corporation, and approved by a majority of those voting on the proposition. Whether this section is superseded in whole or in part by sections 2835-6 and' 7, as being the latest legislation on the subject, or whether section-2687, when read in connection with the others, merely authorizes a greater tax to be levied for the current year, on a vote of a majority, while a tax that is to continue for a term-of years must have in favor of it the two-thirds of those voting upon it, or what construction is to be given to it, is not clear. But we incline to the opinion that sections 2835-6 and 7 are-those which govern the case. The council has proceeded under them, except that the vote provided for has not been had. And as at present advised, we are of the opinion that-the issue and sale of the bonds and the levy of a tax to pay the same are wholly unauthorized, and that an injunction should be granted as prayed for, until the case can be-heard.
Since the foregoing decision was made, our attention has: been called to the case of The Findlay Gas Light Co. v. The Village of Findlay, decided by the circuit court of Hancock county, and reported in 2nd Circuit Court Reports, 237, which. ^yas not cited to us on the argument of the question, and in which that court seems to entertain, on one point, a.different-opinion from that expressed by us — and .that is, as to the-right of the council of a municipal corporation to anticipate by *281 the borrowing of money, the collection of a tax levied for other than sanitary or street cleaning purposes, or the general revenue fund, which sections 2685 and 2700 expressly allow.
The case referred to, as appears from the syllabus, was decided upon altogether different grounds. And this point is not referred to in the syllabus. But in the opinion of Judge Moore, who announced the conclusion of the court, it is said on page 245 : “ Under paragraph 18, section 2688, the council had power to levy taxes for lighting the corporation, and also-erecting gas-works, etc.” * * *• “ If the bonds issued can be provided for, without increasing or exceeding the levy authorized,. and if issued to anticipdte the tax, - it is not required that the question be submitted to a vote.” He then quotes section 2687 of the Revised Statutes, which reads as follows: “A greater tax than that authorized by this chapter may be levied for either of the purposes mentioned therein, if the-proposition to make such levy shall have been first submitted to a vote of the electors of the corporation under an ordinance-prescribing the time, place and manner of voting on the same, and approved by a majority of those voting on the proposition.” “ So” (he proceeds) “-that the council in either event had the power to provide for lighting the corporation.. The provision cited does not provide that the question shall, be submitted at a general election. Either with an election authorizing a greater levy than that provided for, or limiting the amount to the levy provided for, the council can anticipate-the expenditure necessary to make the improvement by issuing the bonds.”
As heretofore stated, it seemed to us, that in view of the-legislation as it now stands, that the council of a municipal corporation cannot properly issue bonds in anticipation of the collection of tax levied, even for the current year, without a grant of such power — that as the right -to do this is expressly conferred in certain cases by sections 2685 and 2700, the maxim, that “ the express mention of one thing implies thé exclusion of another ” applies, and leads to the conclusion that-the legislature did not intend to confer the right to anticipate the collection of any other taxes, than those expressly mentioned;.
*282 In the Findlay case the court did not refer to any section "Which in their opinion confers suoh authority. It may be that it was the view of that court that section 2700 gave this power. It was not claimed in the argument before us that it -did, and we took it for granted, that this section which allows loans to be made in anticipation of the general revenue fund, levied for the current year, related to the same fund for which the council of a village under the provisions of section 2682 was authorized to levy a tax of one-half of one mill from each •dollar on the coporationduplicate, “for the general purposes of the corporation, and called in section 2689 “the levy for general purposes,” as distinguished from those taxes which it was authorized to levy for any of the purposes mentioned in section 2683. And as section 2689 requires the council by the “Ordinance levying the taxes, to levy specifically for each purpose, and each fund to be kept separate, and no transfers made from one to the other, we were of the opinion that section :2700 applied only to the tax levied for the general purposes of the corporation, under that designation, and did not warrant a loan in anticipation of a tax for the purchase of steam ■fire-engines and apparatus, and such, on reflection, now -seems to us to be the case.
, We think the claim cannot now be properly made as urged by counsel for the village, under the decision of the supreme court in the case of The Bank of Chillicothe v. The City of Chillicothe, 6 Ohio, pt. 2,31, that independent of the statutes the village has the right to issue the bonds in anticipation of any tax. That case held substantially, that when the charter «contains no restriction on the power of a municipal corporation to borrow'money, it may do so. Our municipal code is now the charter of all such corporations, and it is .full of restrictions on the power to levy taxes and borrow money, as we have already shown. In the case of Morrill v. The Town of Monticello (9th Weekly Law Bulletin, 113), the U. S. Circuit Court for the District of Indiana, Judge Gresham delivering the opinion of the court, it was held, “ that municipal corporations have no general power to issue bonds or other commercial paper. That it must be conferred by statute. And no .such power having been granted by the legislature in that. *283 case, that purchasers of the bonds, notwithstanding their form, hold them as non-negotiable paper, and subject to all legal and equitable defenses in favor of the maker.”
Lewis & Clark, for plaintiff.
Wallace D. Wilson, for defendants.
Whether our views as to the issue of bonds in anticipation of a tax for that purpose, even for the current year, be correct or not, is probably not very material in this case, and we have discussed the question at some length on account of the great importance of it in practice, and the difference in opinion which seems to exist with reference to it. The petition in the case before us does not expressly show the amount of the village duplicate, and thus enable us to determine from it whether the sum of five thousand dollars could be legally levied during the current year, by keeping within the 10 mill limit, and raising no tax for any other purpose.
It was conceded at the hearing before us by the counsel for the village, and it is apparent from the whole case, that the tax for the payment of these bonds is not all to go upon the duplicate of this year, but is to extend over the whole ten years that the bonds are to run, and for the issue now of bonds in anticipation of the taxes for the whole term, no authority whatever we suppose can be produced. For,-beyond all controversy, it would be in direct conflict with the provisions of sec. 2698, which expressly prohibits the council from making any appropriation, or contracting any debt or obligation •of any description, for either of the purposes specified in the levy of the council as provided for in sec. 2691, exceeding the amount of taxes and revenue from other sources, for the current •year, received for such purposes. And the money belonging to one fund shall not be transferred to another, nor used for any purpose except that for which it was collected or received. It would seem that the issue in this case, at this time, of bonds to the amount of $5,000, in anticipation of a tax which on this year’s duplicate would not exceed for this purpose the rsum of $800, would be in contravention of this section.